STATE OF NEVADA, BY AND THROUGH THE WELFARE DIVISION OF THE DEPARTMENT OF HUMAN RESOURCES AND MARTHA VINE, APPELLANTS, v. JOHN M. VINE, RESPONDENT.

No. 13727

WELFARE DIVISION OF THE STATE OF NEVADA, DEPARTMENT OF HUMAN RESOURCES, APPELLANT, v. JOHN MICHAEL VINE AND MARTHA JO VINE, RESPONDENTS.

No. 14264

April 21, 1983                              662 P.2d 295

*Brian McKay,* Attorney General, *Roger D. Comstock,* Deputy, *Nancy Ford Angres,* Deputy, Carson City; *Terrance P. Marren,* Deputy, Las Vegas, for Appellants.

*Robert K. Dorsey,* Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

In these cases the State of Nevada seeks to establish that an order terminating parental rights does not by operation of law also terminate a parent's obligation of child support. In light of the interlocking nature of parental rights and responsibilities, and the intention of the Legislature as evidenced by the legislative scheme, we construe the term "parental rights" to include both parental rights and parental obligations. Therefore, we affirm the judgment of the district court in both Case No. 13727 and Case No. 14264.

## THE FACTS

John M. Vine and Martha Jo Vine were granted a decree of divorce in Clark County on August 26, 1974. Martha Jo Vine was awarded custody of their year-old daughter, Amanda Leigh Vine, and John Vine was ordered to pay $50.00 per month for child support.

On July 15, 1975, Judge Addeliar D. Guy issued an order terminating all parental rights of John Vine with respect to his daughter, on the basis of Vine's complete failure to provide her with support or attention. The judge decreed that "all parental rights of John Michael Vine, with respect to Amanda Leigh Vine, be, and they are hereby terminated and said child is declared free from any and all custody and control of said John Michael Vine." Martha Jo Vine received sole parental rights over her daughter.

John Vine entered an appearance in the divorce and parental rights termination proceedings, but did not contest the actions of the court. He states that he consented to the termination of his parental rights on the express representation of Mrs. Vine's attorney that the termination order would cut off his support obligation.

On June 12, 1981, the State of Nevada filed an action against John Vine under the Revised Uniform Reciprocal Enforcement of Support Act, seeking both reimbursement for past welfare assistance payments and future support for Amanda Vine. In defense, John Vine produced the July 15, 1975 order terminating his parental rights. Judge Legakes dismissed the State's petition. The appeal in Case No. 13727 followed.

While the above appeal was pending, John Vine moved to correct the 1975 parental rights termination order *nunc pro tunc,* asserting that it was the intention and understanding of all the parties that the order terminated his parental duties as well as his parental rights. Judge Guy granted the motion on April 19, 1982, amending the order to provide that "all parental rights *and duties* of John Michael Vine . . . are . . . terminated. . . ." (Emphasis added.)

On May 21, 1982, the State of Nevada moved to intervene in the above action and obtain relief from, or a stay of, the amended order. The State argued that the *nunc pro tunc* amendment improperly altered the substance as well as the form of the prior order. The State also suggested that if the parental rights termination order cut off Amanda Vine's right to support, the failure to provide her with a guardian *ad litem,* notice, and a hearing in that proceeding violated her due process rights.

Judge Guy denied the State's motion to intervene. He specifically found that, at the time the order terminating parental rights was entered, all parties and the court understood and intended that the order would terminate in all respects the parental relationship between John Vine and Amanda Vine, including the former's obligation of support. The appeal in Case No. 14264 followed, and was eventually consolidated with Case No. 13727.

## EFFECT OF AN ORDER TERMINATING PARENTAL RIGHTS

Appellants' central argument is that the Legislature was aware of the difference between rights on the one hand and responsibilities or obligations on the other, and the absence of the latter terms from NRS 128.110[1] indicates the Legislature's intention that parental responsibilities such as child support should continue despite a termination of parental rights. Appellants note that NRS 127.160 expressly provides that entry of a final decree of adoption relieves the natural parents of all parental responsibilities for, as well as rights over, the adopted child.[2] They also point out that while NRS 128.015 defines

---

[1] In 1975, NRS 128.110 provided as follows:

Whenever the procedure described in this chapter has been followed, and upon making the finding required by NRS 128.105 at a hearing upon the petition, the court shall make a temporary or final written order, signed by the judge presiding in such court, judicially depriving the parent or parents of the custody and control of, and terminating the parental rights of the parent or parents with repsect to such minor person, and declaring such person to be free from such custody or control, and placing those rights in some person or agency qualified by the laws of this state to provide services and care to children, or to receive any children for placement. Whenever a temporary order is made, the court shall retain jurisdiction of the matter and may thereafter, and upon such notice as shall be required by the court, hear further evidence and may enter any order which could have been made on the completion of the original hearing.

NRS 128.110 was amended in 1981 to alter some terminology and remove the provisions for temporary orders, making all such orders final. The language concerning the effect of the order remains substantially unchanged.

[2] NRS 127.160 provides in relevant part as follows:

After a decree of adoption is entered, the natural parents of an adopted child shall be relieved of all parental responsibilities for such child, and they shall not exercise or have any rights over such adopted child or his property. The child shall not owe his natural parents or their relatives any legal duty nor shall he inherit from his natural parents or kindred.

"parent and child relationship" to include both rights and obligations,[3] NRS 128.110 does not state that an order terminating parental rights shall sever the parent and child relationship. Appellants conclude that only a final decree of adoption operates to terminate both the rights and responsibilities of a parent.

We must disagree. In Roelfs v. Sam P. Wallingford, Inc., 486 P.2d 1371 (Kan. 1971), the Kansas Supreme Court construed a statute much like NRS 128.110. The statute provided that when the court adjudged a parent or parents to be unfit, it could "make an order permanently depriving such parents, or parent, of parental rights" and commit the child to an appropriate person or institution. On the basis of the strong language of the statute, the general tenor and purpose of the act, and the reciprocal nature of the rights and duties arising from the parent-child relationship, the court determined that an order terminating parental rights under the statute also cut off all parental obligations, including the obligation of support. *See* In Interest of Ingold, 610 P.2d 130 (Kan.App. 1980); In Interest of Wheeler, 601 P.2d 15 (Kan.App. 1979). We find the reasoning in *Roelfs* persuasive.

This Court has already stated its awareness "of the seriousness and of the terrible finality of a decree terminating parental rights." Carson v. Lowe, 76 Nev. 446, 451, 357 P.2d 591, 594 (1960). *See* Chapman v. Chapman, 96 Nev. 290, 295, 607 P.2d 1141, 1145 (1980) (termination of parental rights is drastic measure; evidence in case does not clearly show that severance of all ties with natural parent will serve child's best interests). We note that in 1981 the Legislature enacted NRS 128.120,[4] demonstrating the legislative intention to make termination orders binding and irrevocable as to both child and parents.

The general purpose of Chapter 128 is to provide a method for ending the parent-child relationship, where doing so is necessary to further the best interests of the child. *See* NRS

---

[3]NRS 128.015 provides as follows:

    1. "Parent and child relationship" includes all rights, privileges and obligations existing between parent and child, including rights of inheritance.

    2. As used in this section, "parent" includes an adoptive parent.

[4]NRS 128.120 provides in relevant part as follows:

    • Any order made and entered by the court under the provisions of NRS 128.110 is conclusive and binding upon the person declared to be free from the custody and control of his parent or parents . . . . After the making of the order, the court has no power to set aside, change or modify it, but nothing in this chapter impairs the right of appeal.

128.005(2)(c); NRS 128.090. In NRS 128.005(2)(a), the Legislature found and declared that "[s]everance of the parent and child relationship is a matter of such importance in order to safeguard the rights of parent and child as to require judicial determination." As noted above, NRS 128.015 defines "parent and child relationship" to include obligations as well as rights. Moreover, NRS 424.080 refers to the termination of both "parental rights and duties" by order of a court of competent jurisdiction.[5]

We believe that these various statutory provisions adequately demonstrate the legislative intention to have an order terminating parental rights completely sever the parent-child relationship, terminating all rights and obligations of both parent and child. Complete severance of the relationship removes all connections which may otherwise engender feelings of continuing attachment or right, and gives the child an unrestrained opportunity to prepare for a new home environment. We therefore adopt the position of the court in Anguis v. Superior Court, 429 P.2d 702 (Ariz.App. 1967), as follows:

> [W]e construe the term "parental rights" in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations.

*Id.* at 705. *See* Sernaker v. Ehrlich, 86 Nev. 277, 281, 468 P.2d 5, 7 (1970) (dicta) ("within parental 'rights' there are parental 'duties', few of which [the father] performed. . . .").

The purpose of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) is to improve and extend the enforcement of existing duties of support against persons presently legally liable for such support. Moffat v. Moffat, 612 P.2d 967, 975 (Cal. 1980). *See* State ex rel. Welfare Div. v. Hudson, 97 Nev. 386, 389, 632 P.2d 1148, 1149 (1981). *See also* NRS 130.030; NRS 425.360(1). Because the 1975 order terminating John Vine's parental rights under NRS 128.110 also

---

[5]NRS 424.080 provides as follows:

Except in proceedings for adoption, no parent may voluntarily assign or otherwise transfer to another his rights and duties with respect to the permanent care, custody and control of a child under 18 years of age, unless parental rights and duties have been terminated by order of a court of competent jurisdiction.

completely extinguished all of his legal duties and responsibilities with respect to his daughter, the State has no basis for its RURESA action against him. We therefore affirm the judgment of the district court dismissing the State's RURESA petition in Case No. 13727.

As the order terminating parental rights also terminated John Vine's parental duties, the *nunc pro tunc* amendment of the 1975 order, while superfluous, was not erroneous. Moreover, the district judge specifically found that the court and the parties had intended the order, at the time it was entered, to eliminate all of John Vine's parental rights and obligations, including the obligation of child support. Hence, the *nunc pro tunc* amendment may be considered correction of a "clerical" rather than "judicial" omission, as the omission "cannot reasonably be attributed to the exercise of judicial consideration or discretion." Channel 13 of Las Vegas v. Ettlinger, 94 Nev. 578, 580, 583 P.2d 1085, 1086 (1978), *quoting* Marble v. Wright, 77 Nev. 244, 248, 362 P.2d 265, 267 (1961). *See* Smith v. Epperson, 72 Nev. 66, 69-70, 294 P.2d 362, 363-64 (1956); Wallace v. Wallace, 520 P.2d 1221, 1224-25 (Kan. 1974). We therefore affirm the judgment of the district court denying the State's motion to intervene in Case No. 14264.

We have considered the other contentions raised by the appellants and found them to be without merit. We affirm the judgments in both appeals.

MANOUKIAN, C. J., and SPRINGER, STEFFEN, and GUNDERSON, JJ., concur.