**In re ESTATE OF Marie Rose BRAA, also known as Marie R. Braa, Deceased.**

**No. C1–89–259.**

Supreme Court of Minnesota.

March 16, 1990.

Teri W. Leibforth, Two Harbors, for appellant.

Robert C. Huseby, Larson, Huseby & Brodin, Duluth, for respondent.

KEITH, Justice.

The court of appeals held petitioner Virginia Marie Carlson could inherit from her adoptive mother, Marie Braa, even though the adoptive parents had committed Carlson to the permanent custody, control and guardianship of the commissioner of public welfare in 1956. Under the specific facts of this case, we hold the final commitment order permanently terminated Marie Braa's parental rights and severed Carlson's right to inherit from her adoptive mother.

Virginia Marie (Ronning) Carlson was born on May 27, 1944 in Two Harbors, Minnesota. Carlson was removed from her natural parents when she was three years old. Marie and Oliver Braa took Carlson into their home for foster care in 1948 and legally adopted her on December 15, 1953.

Carlson displayed emotional and behavior problems at home and school before and after the time of the adoption. The Braas reported the problems they were experiencing with Carlson to the welfare department in 1954 and 1955. The executive secretary of the Lake County Welfare Board removed Carlson from the Braas' home at their request on March 23, 1956. Five months later, the executive secretary petitioned the juvenile court to find that Carlson was a dependent and neglected child.

On August 28, 1956, the Lake County Juvenile Court concluded that 12–year–old Carlson was dependent and neglected and committed her "to the permanent custody, control and guardianship of The Commissioner of Public Welfare." Juvenile Ct. Order, No. 2718J, August 28, 1956. The word "permanent" was specifically inserted on the preprinted form. Carlson was eventually placed in foster care in St. Paul. She was never adopted and was released from foster care when she was still a minor at eighteen years of age. Carlson returned to Two Harbors after her release.

Marie Braa died testate in 1984 survived by three brothers. She devised and bequeathed her estate to her brothers and a sister-in-law in equal shares. Her will stated:

I * * * intentionally and with full knowledge have omitted Virginia Marie Braa Sarff Carlson, whether or not she is or was a legally adopted child of mine, as an heir or devisee to any part of or share in my estate.

Carlson brought a petition for adjudication of status of testacy, determination of heirs and appointment of administrator. The Lake County Court, Probate Division, concluded the juvenile court's final order of commitment permanently terminated Marie Braa's parental rights and that Carlson was not Braa's legal daughter or heir-at-law on the date of Braa's death. The court further concluded that any previous legal relationship between Braa and Carlson was dissolved by the 1956 commitment order. Accordingly, Carlson could not inherit from Braa or challenge Braa's will.

Carlson filed a notice of appeal with the court of appeals. The court dismissed the appeal as prematurely taken from a non-appealable order partially determining heirship. Carlson then filed an objection to the will, claiming lack of testamentary capacity or intent, undue influence, fraud, duress, and mistake. Notwithstanding, the probate court entered a decree distributing Braa's estate according to the terms of her will.

Carlson appealed from the order of complete settlement of estate and decree of

distribution, order allowing final account, order of formal probate of will, and order for determination of heirship. The court of appeals, relying on Minn.Stat. ch. 260 (1988) and case law involving modern termination of parental rights statutes, reversed the probate court.

> Where * * * neither the legislature nor the courts have expressly provided for the severance of the child's right to inherit upon termination of parental rights, the child's right to inherit is undiminished. Support for this decision is derived from the general legislative tendency to ensure such rights for children after termination of parental rights.

*In re Estate of Braa,* 442 N.W.2d 354, 356 (Minn.App.1989). The estate appeals from that decision.

The parties agree with this court's determination that the law in effect at the time Carlson was committed to the permanent guardianship of the commissioner controls the outcome of this case. Thus, the legal relationship between Carlson and Marie Braa was determined at the time the commitment order was entered. The court of appeals discussed both the 1953 and 1988 versions of Chapter 260, but apparently based its decision on Minn.Stat. ch. 260 (1988) and foreign case law involving current termination of parental rights statutes. The foreign cases are inapposite because they deal with statutes that explicitly address the child's right to inherit after parental rights have been terminated, which the Minnesota statute fails to do. We are compelled to address Minn.Stat. ch. 260 (1988), however, with respect to the issue of whether a child's right to inherit is severed by a termination of parental rights, since the court of appeals placed some reliance on it.

■ The court, citing Minn.Stat. § 260.011 (1988), stated that the current *custody* law speaks only in terms of parental rights and does not address the rights of the child after termination of parental rights. *In re Braa,* 442 N.W.2d at 356. This decision ignores section 260.241 (1988) which states the general statutory rule that all parent and child rights are severed by a termination of parental rights, with two exceptions:

> Upon the termination of parental rights all rights, powers, privileges, immunities, duties and obligations, including any rights to custody, control, visitation or support existing between the child and the parent shall be severed and terminated * * *. Provided, however, that a parent whose parental rights are terminated shall remain liable for the unpaid balance of any support obligation owed under a court order upon the effective date of the order terminating parental rights.

Minn.Stat. § 260.241, subd. 1. Thus, the first exception is that a support obligation may not be terminated under specific circumstances. Secondly, the statute also provides that a termination of parental rights will not disentitle a child to any benefits the child may derive because of membership in a federally recognized Indian tribe. Minn.Stat. § 260.241, subd. 2.

Preservation of inheritance rights is not one of the defined exceptions. Minn.Stat. § 645.19 (1988) provides, "Exceptions expressed in a law shall be construed to exclude all others." By carving out an exception, the legislature excludes other exceptions. *Green–Glo Turf Farms v. State,* 347 N.W.2d 491, 494 (Minn.1984). An exception preserving a child's right of inheritance is, therefore, excluded under the 1988 statute. Consequently, we hold that pursuant to Minn.Stat. § 260.241 (1988), a child's right to inherit from its parents is severed at the time parental rights are terminated.

■ The probate court correctly based its findings and conclusions on the 1953 provisions of Minn.Stat. chapters 259 and 260. Minn.Stat. § 259.29 (1953) provided that an adopted child "shall inherit from his adoptive parents or their relatives the same as though he were the legitimate child of such parents * * *. The child shall not * * * inherit from his natural parents or kindred." Under this statute, Carlson had the right to inherit from the Braas during the duration of the parent-child relationship. Whether that right continued once the court awarded her as a dependent and neglected child to the guardianship of

the commissioner of public welfare pursuant to an order for final commitment under Minn.Stat. § 260.11 (1953) is the issue. Although the law is not entirely clear in this area, several factors support an interpretation that a final order of commitment permanently terminated parental rights.

First, Minn.Stat. § 260.12 (1953) indicated that after entry of a final commitment order, the parents were not entitled to notice of any subsequent adoption proceedings. The commissioner of public welfare was given the legal authority to consent to a child's adoption. *In re Zavasky*, 241 Minn. 447, 451, 63 N.W.2d 573, 577 (1954); Minn.Stat. § 260.12.

Secondly, *In re Anderson*, 235 Minn. 192, 50 N.W.2d 278 (1951), is one of the few cases interpreting chapter 260 as it existed in 1956. The court stated, "A consideration of the provisions of § 260.06 indicates that the Legislature, by direct expression of finality, clearly intended the committal order to be a final adjudication of parental rights * * * so as to terminate permanently such parental rights * * *." *Id.* at 198–99, 50 N.W.2d at 284.

Finally, Minn.Stat. ch. 260 (1953) was substantially repealed by the Juvenile Court Act, which took effect on July 1, 1959. Act of April 24, 1959, ch. 685, 1959 Minn. Laws 1275–1306. It was replaced by the Juvenile Court Act, Minn.Stat. ch. 260 (1961), that contained the termination of parental rights statute as we know it today. The Interim Commission Comments accompanying the Juvenile Court Act, which provide a contemporaneous explication of the prior law, reveal that parental rights were considered terminated upon an order for "final commitment" under the former version of Chapter 260. Minn.Stat. Ann. § 260.191 (1982), Interim Commission Comment, 1959.

Given these factors plus the circumstances under which the Braas' parental rights were terminated and the insertion of "permanent" in the final commitment order, we hold the commitment order permanently terminated the Braas' parental rights, severing the parent-child relationship. Since Carlson is not Marie Braa's child, she is not

an heir within the meaning of Minn.Stat. § 524.1–201(20) (1988) and has no standing to challenge Braa's will.

Reversed.