In re SCHEEHLE, n.k.a. Ford, Appellant; Carpenter, Appellee.

[Cite as *In re Scheehle* (1999), 134 Ohio App.3d 167.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–1248.

Decided Sept. 9, 1999.

*James S. Albers*, for appellant.

*Gary S. Wellbaum*, for appellee.

DESHLER, Judge.

Plaintiff-appellant, Darlene Ford, f.k.a. Darlene Scheehle, appeals from a judgment in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, ordering appellant to refund to defendant-appellee, Travis Carpenter, all child support paid during the effective period of an interlocutory order of adoption.

The child that is the subject of this adoption action, Madyson Ford, f.k.a. Madyson Scheehle, was born on December 12, 1993, the daughter of appellant Darlene Ford. By judgment entry journalized October 19, 1994, the juvenile branch determined that appellee, Travis Carpenter, was the biological father of Madyson. The judgment established the father-child relationship between appellee and his minor child and set child support in the amount of $433.28 per month. The order makes no mention of visitation rights between father and child.

Appellant was married on January 24, 1997, to Timothy Ford, who subsequently filed his petition on February 21, 1997, for a step-parent adoption with the Franklin County Probate Court. The petition asserts that, as a statutory ground for proceeding without appellee's consent to the adoption, appellee had failed without justifiable cause to communicate with the child for a period of at least one year immediately preceding the filing of the adoption petition, as provided in R.C. 3107.07(A). The probate court entered an interlocutory order of adoption on July 25, 1997, followed, after the six-month statutory period, by a final order of adoption on January 26, 1998.

The sole issue in this appeal is whether appellee was liable to appellant for child support during the six-month period following the interlocutory order of adoption, but prior to the issuance of the final order. Appellee filed his motion in the juvenile branch seeking to terminate his child support obligation as of the effective date of the interlocutory order of adoption. The initial magistrate's

decision and recommendation found that appellee's child support obligation would not terminate until the entry of the final order of adoption. Appellee filed objections to the magistrate's decision, and in an entry filed September 1, 1998, the court sustained the objections finding that appellee's obligation terminated upon the entering of the interlocutory order of adoption. The court also found that appellee's obligation to provide health insurance and other medical expenses would also terminate at that time.

■ Appellant has timely appealed from the trial court's judgment. Initially we note that appellant's brief fails to conform with App.R. 16(A)(3), because it does not contain "a statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." However, because the narrow legal issue raised in this appeal is clearly discernable from the record and the arguments presented in the parties' briefs, we find that no material prejudice to appellee results from this failure to conform to the Appellate Rules, and we shall proceed to address the merits of the appeal.

■ We define the issue before us as whether a biological father's child support obligation should terminate upon the issuance of an interlocutory order of adoption, pursuant to a petition filed by the adoptive father. Both parties agree that this is a question of first impression before the courts of Ohio.

R.C. 3107.15 governs final and interlocutory decrees of adoption:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final as issued by a court of this state, or a decree issued by a jurisdiction outside this state as recognized pursuant to section 3107.18 of the Revised Code, shall have the following effects as to all matters within the jurisdiction or before a court of this state, whether issued before or after the effective date of this amendment:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes.

" * * * *

"(C) An interlocutory order of adoption, while it is in force, has the same legal effect as a final decree of adoption. If an interlocutory order of adoption is vacated, it shall be as though void from its issuance, and the rights, liabilities, and status of all affected persons that have not become vested are governed accordingly."

Appellant emphasizes the language found at the outset of the section: "A final decree of adoption and an interlocutory order of adoption *that has become final* * * *." Appellant would construe this as a limitation on the finality of the interlocutory order of adoption, and thus a limitation upon its effect. It is apparent that this language is open to conflicting interpretations, and states with similar statutes derived from the Uniform Adoption Act have modified it to remove the distinction between interlocutory and final decrees. See, *e.g.,* Alaska Stat. 2523.005 *et seq.* We find, however, that R.C. 3107.15(C), as set forth above, eliminates any ambiguity in the section as a whole. R.C. 3107.15(C) clearly states that an interlocutory order of adoption, while in force, has the same legal effect as a final decree. And, as stated at R.C. 3107.15(A)(1), the parental rights and responsibilities of the biological father are terminated by final decree of adoption, and the adoptive father's rights and obligations begin at this time under R.C. 3107.15(A)(2). While R.C. 3107.15(A)(1) defines the effect of finality arising from the decree of adoption, R.C. 3107.15(C) addresses the effect of the interlocutory order and it is this language that is dispositive of the issue before us.

While some merit can be found for the position that postponing cessation of the biological father's support obligation until entry of the final decree eliminates a degree of uncertainty with respect to ongoing support for the child, and furthermore obviates the problem of how to handle the support obligation for a biological father in instances where the interlocutory decree of adoption is ultimately voided, that is not the case before us because a final decree was entered in the present matter. In the final analysis, both the best interests of the child and the equitable allocation of obligations and rights among the parties support the proposition that the biological father's support obligation should cease at the moment the adoptive father's commences. This is all the more reasonable because the biological father's right to visitation with the child is terminated by the interlocutory decree.

In accordance with the foregoing, we find that the trial court did not err in terminating appellee's support obligation as of the date of the interlocutory order of adoption, and in ordering appellant to refund to appellee amounts paid after entry of the interlocutory order. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is therefore affirmed.

*Judgment affirmed.*

LAZARUS, P.J., and TYACK, J., concur.