52 P.3d 934 (2002)
In the Matter of the Parental Rights as to T.M.C., a Minor.
Brian M., Appellant,
v.
The State of Nevada, Department of Human Resources, Welfare Division, Child Support Enforcement Program, Respondent.
No. 38306.
Supreme Court of Nevada.
August 28, 2002.
*935 Law Offices of Robert T. Knott Jr. and Vicki Carlton, Las Vegas, for Appellant.
Frankie Sue Del Papa, Attorney General, and Donald W. Winne Jr. and Heather E. Kemp, Deputies Attorney General, Carson City, for Respondent.
Before YOUNG, AGOSTI and LEAVITT, JJ.

OPINION
PER CURIAM.
In this appeal, we consider whether the factors presented by appellant Brian M. provide clear and convincing evidence that termination of his own parental rights serves the best interests of his child.

FACTS
On December 10, 1985, T.M.C. was born to Leah G. and Brian. Leah testified that she and Brian were surprised to find out she had become pregnant because she previously had been told that she could not have children. Further, she was aware that Brian never wanted children.
Leah allowed her sister to become the child's legal guardian because Leah acknowledged that she had a substance abuse problem.[1] Leah's sister raised the child and then Leah's mother obtained custody for three years before the proceeding to consider terminating Brian's parental rights.
Respondent Welfare Division, Child Enforcement Program ("Division") became involved when Leah's sister applied for assistance pursuant to NRS Chapter 422. A judge ordered a blood test to establish paternity, and the test results confirmed that Brian was the child's father. During the termination of parental rights hearing, Brian did not contest the results of the paternity test. Leah testified that while she had always paid child support and been involved in the child's life, Brian had never been forced to provide for the child. She also testified that once paternity was established, Brian had some sporadic involvement with the child, calling to talk with the child and attending events with the child.
On May 3, 2001, Brian filed a petition to terminate his parental rights. A hearing on the petition was conducted on June 28, 2001. The Division opposed the motion and argued that if Brian's parental rights were terminated, the child would remain on welfare. Leah also opposed the termination of Brian's parental rights, and testified that she believed the child could benefit from a relationship with him. Brian's counsel expressed a desire to question Leah regarding her testimony that the child's best interests would not be served by terminating Brian's parental rights. The district court judge interrupted Brian's counsel and asked if he thought it was good public policy to permit a father to terminate his own rights at any time in order to avoid having to pay child support. Further, the district court expressed concern that granting Brian's request would result in "millions" of fathers rushing into court. Brian's counsel responded that those fathers would be rushing to court to seek similar relief only if they had "astute attorneys." Nevertheless, Brian's counsel did not object to being denied the opportunity to examine Leah.
Brian's counsel maintained that Brian told Leah he would not support the child and that she agreed. Further, Brian's counsel argued that the child's best interests would be served by terminating Brian's parental rights since he never wanted to be involved with the child. In addition, his counsel claimed that if Brian was not required to pay child support, Brian and the child would have a better chance of re-establishing a relationship. The district court denied Brian's petition to terminate *936 his parental rights on public policy grounds as well as the child's best interests. Brian now appeals the district court's order denying his petition.

DISCUSSION
"Termination of parental rights is `an exercise of awesome power.'"[2] "Accordingly, this court closely scrutinizes whether the district court properly preserved or terminated the parental rights at issue."[3] Although "the district court must find at least one of the enumerated factors for parental fault" in order to terminate parental rights, the court must give primary consideration to the child's best interests.[4] There must be clear and convincing evidence established in order to justify termination.[5] This court will not overturn the district court's decision if the decision was based on substantial evidence.[6]
In the present case, Brian argues that numerous factors provide clear and convincing evidence that terminating his parental rights is in the child's best interests including: (1) Leah did not give the child Brian's surname; (2) Leah did not intend that Brian would have a role in the child's life; (3) Brian did not see the child until the child was approximately fourteen years old; (4) Brian was only in contact with the child because the child's maternal aunt filed a petition for support; (5) Brian never wanted to have children; (6) both Brian and Leah never thought pregnancy was a possibility; (7) Leah allowed her sister to become guardian of the child; (8) the child now lives with Leah's mother; (9) the child does not desire a parent-child relationship; and (10) it is the Division, rather than Leah or Leah's mother that seeks reimbursement for the support that has been provided.
The district court heard testimony from Leah that the child could benefit from a relationship with Brian, albeit not a parent-child relationship. The Division argued that in addition to receiving reimbursement for support already provided to the child, obtaining future support from Brian would provide additional resources to assist in raising the child. The district court noted that public policy considerations are served by requiring that fathers pay child support, and also noted that taxpayers have been supporting the child for years when the biological father has been available and nearby. Brian only countered that cutting off his future financial obligations toward the child would not destroy his relationship with the child but might actually enhance it.
We conclude that none of the arguments presented by Brian provides clear and convincing evidence that his parental rights should be terminated. Brian's arguments do not satisfy either the parental fault or the best interests prongs set forth in NRS 128.105. Although Brian has expressed an intent to abandon his child, he did not provide evidence that any other basis for parental fault existed at the time of the hearing. Furthermore, none of the reasons articulated by Brian serves his child's best interests. Instead, these "factors" serve Brian's personal financial interest, a consideration not enumerated in NRS 128.105(2).
The termination of parental rights is aimed at protecting the welfare of children.[7] However, it is inappropriate to use termination of parental rights as a means to reward a parent by shielding him from his obligation to provide support for his child. It would be a rare circumstance in which the termination of parental rights would enhance, rather than deteriorate, the relationship between a parent and his child.
We have previously held that parental rights and parental obligations, as articulated *937 in NRS 128.015(1), are inseparable.[8] An order terminating parental rights absolves all parental obligations, including child support.[9]
While the Nevada Revised Statutes do not specifically address limits on voluntary termination, courts in other states have considered this issue at length. The Tennessee Court of Appeals recently examined this situation in C.J.H. v. A.K.G.,[10] and its analysis is both informative and persuasive.
In C.J.H., the Tennessee Court of Appeals held that proper consideration of a termination order involves a requirement that, in addition to appropriate grounds, the court must determine that the termination is in the child's best interests, not the parents'.[11] It noted with interest the Alabama Supreme Court's opinion that in cases where the parents jointly agree to termination, the parents agree by mutual consent to waive the child's right to support from one parent with the child receiving nothing in return.[12] The Tennessee Court of Appeals held that such agreements are void as a matter of public policy.[13] The court further held that even when a parent chooses not to establish or maintain contact with the child, the child's right to receive support from the parent remains intact.[14]
The Supreme Court of Iowa has similarly held that parents cannot abdicate their responsibilities through their conduct, rejecting a father's claim that parental fault was proven by his announced intention to constructively abandon his child by avoiding any parental involvement with the child.[15] The father unsuccessfully argued that a "best interests of the child" analysis was irrelevant in light of his proposed abandonment.[16] In refusing to terminate the father's rights, the court addressed public policy concerns by stating that:
Acceptance of [the father's] argument ultimately would open a hatch for a parent to escape his or her duty to support a child. We cannot be persuaded that the legislature intended ... to alter so radically the parental support obligation. Our determination is reinforced by decisions from other jurisdictions holding a parent may not voluntarily avoid a duty to support his or her child.[17]
In the present case, Brian seeks to terminate his parental rights, ostensibly because it is in the child's best interests. We conclude that termination would serve only Brian's best interests. While we cannot force Brian to supply the child with most of the amenities typically provided by a fathersuch as love, companionship, and guidancewe can require that Brian satisfy his parental obligations and provide for the financial well-being of his child. Moreover, public policy considerations demand that parents, not the State, provide for their children when possible.
We therefore hold that a parent cannot voluntarily terminate his parental rights and obligations unless such termination is deemed to be in the child's best interests. Even if the parent engages in conduct that satisfies the parental fault provisions of NRS 128.105, the child's best interests must be served by the termination of parental rights for such termination to be appropriate.[18] Here, Brian's contention that the child would be better off without him and his continued financial support is unpersuasive.
Brian also argues that the district court improperly precluded him from *938 examining Leah concerning the child's best interests and other issues. "`[F]ailure to object to asserted errors at trial will bar review of an issue on appeal.'"[19] Here, Brian's counsel expressed interest in examining Leah on the child's best interests but the district court interrupted Brian's counsel, questioning whether Brian's position was consistent with public policy. Brian's counsel did not renew his request to examine Leah and did not object that he was denied the opportunity to examine Leah. Therefore, we conclude that Brian is precluded from raising this argument on appeal.
When considering requests for termination of parental rights, the child's best interests must prevail. Here, Brian's contention that the child's best interests would be served by termination is unpersuasive. A minor child has a right to support from a parent that cannot be abdicated unless the best interests threshold is satisfied. Additionally, Brian's claim that he was improperly precluded from questioning Leah is not supported by the record and was not properly preserved for appeal.
Accordingly, we affirm the district court's order denying Brian's petition to terminate his parental rights.
NOTES
[1] Brian alleges that he was not notified of the guardianship petition.
[2] Matter of Parental Rights as to N.J., 116 Nev. 790, 795, 8 P.3d 126, 129 (2000) (quoting Smith v. Smith, 102 Nev. 263, 266, 720 P.2d 1219, 1220 (1986), overruled on other grounds by Matter of N.J., 116 Nev. 790, 8 P.3d 126).
[3] Id.
[4] Id. at 801, 8 P.3d at 133.
[5] Id.
[6] Id. at 795, 8 P.3d at 129.
[7] Id. at 801, 8 P.3d at 133.
[8] State ex rel. Welfare Div. v. Vine, 99 Nev. 278, 283, 662 P.2d 295, 298 (1983).
[9] Id.
[10] No. M2001-01234-COA-R3-JV, 2002 WL 1827660 (Tenn.Ct.App. Aug.9, 2002).
[11] Id. at *3.
[12] Id. at *5 (citing Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987), overruled on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990)).
[13] Id. at *4-6.
[14] Id. at *5-7.
[15] Interest of D.W.K., 365 N.W.2d 32, 34-35 (Iowa 1985).
[16] Id.
[17] Id. at 35.
[18] NRS 128.105.
[19] Allum v. Valley Bank of Nevada, 114 Nev. 1313, 1324, 970 P.2d 1062, 1069 (1998) (quoting McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983)).