2003 OK 87

**STATE of Oklahoma, DEPARTMENT OF HUMAN SERVICES, ex rel. Patricia Ann OVERSTREET, Appellant,**

v.

**Quinton Harold OVERSTREET, Appellee.**

**No. 97,179.**

Supreme Court of Oklahoma.

Oct. 14, 2003.

---

See also 78 P.3d 956.

⚷232

John O. Walton, Assistant District Attorney, Ardmore, OK, for appellant.

Wallace Coppedge, Little, Little, Little, Windel, Coppedge, Oliver, & Gallagher, Tishomingo, OK, for appellee.

WINCHESTER, J.

¶1 The issue before us is one of first impression, that is, whether the termination of parental rights also terminates the duty to support. The legal issue and facts of this appeal are similar to those before us in *Lindsay v. McCabe*, 2003 OK 86, 78 P.3d 956, also decided today. The current law on this issue, found in 10 O.S.2001, § 7006–1.3(B)(1), and enacted in 1994, provides that termination of parental rights shall not terminate the duty to support the minor child until a decree of adoption has been entered.[1] We

---

1. The applicable portion of the statute, subsection B, was added by 1994 Okla.Sess.Laws, ch. 356, § 10, effective September 1, 1994. The

hold that before the amendment of § 7006–1.3 in 1994, termination of parental rights terminated the duty to support that parent's minor children.

## FACTS

¶2 The appellee, Quinton Harold Overstreet, Father, and Patricia Ann Overstreet, Mother, were divorced in 1987. The decree of divorce granted Mother custody of the parties' two children, and ordered Father to pay $400.00 per month in child support. In 1989, Mother sought termination of Father's parental rights for failure to pay child support. After a hearing, the trial court found Father in contempt for failure to pay child support, granted Mother a judgment for the arrearage, and terminated Father's parental rights.

¶3 In 2001, Mother applied for and received public assistance for the care of one of the parties' children. The Department of Human Services, (DHS), the appellant, consequently sought and obtained an order to withhold income for child support against Father to recoup funds expended or to be expended on the child's behalf, and served the order on Father's employer.

¶4 Father filed a motion to terminate the order, pursuant to 43 O.S.2001, § 117(A)(1),[2] asserting that the 1989 order which terminated his parental rights also terminated his child support obligation. The trial court agreed and granted Father an injunction restraining further wage assignments for support obligations. DHS appealed and the Court of Civil Appeals affirmed the order of the trial court. We have previously granted certiorari to consider this issue of first impression.

## EFFECT OF TERMINATION OF PARENTAL RIGHTS ON CHILD SUPPORT

¶5 Before 1994, and at the time Father's parental rights were terminated, the statute now codified as 10 O.S.2001, § 7006–1.3 was 10 O.S.1981, § 1132, and provided:

"The termination of parental rights terminates the parent-child relationship, including the parent's right to the custody of the child and his right to visit the child, his right to control the child's training and education, the necessity for the parent to consent to the adoption of the child and the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. Provided, that nothing

---

statute, currently codified at 10 O.S.2001, § 7006–1.3 provides:

"A. The termination of parental rights terminates the parent-child relationship, including the parent's right to the custody of the child and the parent's right to visit the child, the parent's right to control the child's training and education, the necessity for the parent to consent to the adoption of the child, the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent.

"B. 1. Except for adoptions as provided in paragraph 3 of this subsection, termination of parental rights shall not terminate the duty of either parent to support his or her minor child.

"2. Any actual notice of termination of parental rights and order terminating parental rights shall indicate that the duty of the parent to support his or her minor child will not be terminated except for adoption as provided by paragraph 3 of this subsection.

"3. Child support orders shall be entered by the court that terminates parental rights and shall remain in effect until the court of termination receives notice from the placing agency that a

final decree of adoption has been entered and then issues an order terminating child support and dismissing the case."

**2.** Title 43 O.S.2001, § 117 provides:

"A. Except as otherwise provided by subsection B of this section, the person obligated to pay support or the person entitled to the support may petition the district or administrative court to:

"1. Modify, suspend, or terminate the order for income assignment because of a modification, suspension, or termination of the underlying order for support; or

"2. Modify the amount of income to be withheld to reflect payment in full of the delinquency by income assignment or otherwise; or

"3. Suspend the order for income assignment because of inability to deliver income withheld to the person entitled to support payments due to the failure of the person entitled to support to provide a mailing address or other means of delivery.

"B. If the income assignment has been initiated by the Department of Human Services, the district court shall notify the Department of Human Services prior to the termination, modification, or suspension of the income assignment order."

herein shall in any way affect the right of the child to inherit from the parent."

1968 Okla.Sess.Laws, ch. 282, § 132.

¶ 6 DHS asserts that the law before 1994 was identical to that codified in 10 O.S.2001, § 7006–1.3(B)(1). The cases and statutes cited by DHS fail to explain the determinative phrase of the 1968 version of the statute that "termination of parental rights terminates the parent-child relationship." The construction of the phrase resolves the issue.

¶ 7 DHS argues that a parent may not, by his own misconduct, unilaterally terminate his legal and moral obligation to support his minor children and cites *West v. West*, 1926 OK 204, 246 P. 599, for support. *West* held that a divorce decree which is silent concerning the support of a minor child does not discharge the parent's obligation to support the child. *West v. West*, 1926 OK 204, ¶ 28, 246 P. 599, 602. The case does not discuss termination of parental rights, nor does it construe the statute at issue in this case. DHS also cites *Bingham v. Bingham*, 1981 OK CIV APP 26, 629 P.2d 1297, to support its position that a parent cannot by his own unilateral conduct, terminate a child's right to parental support. The divorce decree in that case approved a provision that excused an adoptive father from payment of child support and additionally provided that he was without visitation rights. The Court of Appeals held that a decree, which by agreement of the parties, deprives a parent of parental rights and duties without a finding concerning best interests of the child is void-able and subject to attack. *Bingham*, 1981 OK CIV APP 26, ¶¶ 13, 16, 629 P.2d at 1300.

¶ 8 We agree that parents cannot be allowed to agree to termination of the parent-child relationship without a hearing and consideration of the best interests of a child. This Court has refused to recognize a release agreement between a mother and father that releases all claims to a child in exchange for a release from prosecuting a paternity action. *State Dept. of Human Services ex rel. K.A.G. v. T.D.G.*, 1993 OK 126, ¶ 7, 861 P.2d 990, 992–993. The Court observed that courts in other jurisdictions which had addressed the issue were uniform in holding that an illegitimate child's right to support cannot be contracted away by its mother. One of the reasons to support this holding was that the agreement had not been approved by a tribunal. *K.A.G.*, 1993 OK 126, ¶¶ 7, 8, 861 P.2d at 993. In contrast, Father's parental rights were terminated by a court for failure to support. That ruling terminated the parent-child relationship.

¶ 9 While courts in other jurisdictions agree that the type of contract found in *K.A.G.* is invalid, the great majority of jurisdictions also agree that judicial termination of parental rights severs the parent-child relationship to the extent that the parent no longer owes a duty to support the child.[3] The case of *State of Nevada v. Vine*, 99 Nev. 278, 662 P.2d 295, *cert. den.*, 464 U.S. 977, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983), has many facts in common with the case before this Court. In *Vine*, the parents of a minor child were granted a divorce. The mother

---

**3.** The following jurisdictions hold the majority view: *Erwin v. Luna*, 443 So.2d 1242, 1244 (Ala. Civ.App.1983); *County of Ventura v. Gonzales* 88 Cal.App.4th 1120, 106 Cal.Rptr.2d 461, 462 (2001); *In re Bruce R.*, 234 Conn. 194, 662 A.2d 107, 111 (1995); *Ponton v. Tabares*, 711 So.2d 125, 126 (Fla.Ct.App.1998); *Department of Human Res. v. Ammons*, 206 Ga.App. 805, 426 S.E.2d 901, 902 (1992), cert. den., 263 Ga. 382, 436 S.E.2d 316 (1993); *Kansas ex rel. Sec'y of Soc. & Rehab. Servs. v. Clear*, 248 Kan. 109, 804 P.2d 961, 966 (1991); *Mauk v. Mauk*, 873 S.W.2d 213, 216 (Ky.Ct.App.1994); *Louisiana v. Smith*, 571 So.2d 746, 748 (La.Ct.App.1990); *In re Estate of Braa*, 452 N.W.2d 686, 688 (Minn.1990); *Schleisman v. Schleisman*, 989 S.W.2d 664, 671 (Mo.Ct.App.1999); *Nevada v. Vine*, 99 Nev. 278, 662 P.2d 295, 297–98 (1983); *Gabriel v. Gabriel*, 519 N.W.2d 293, 295 (N.D.1994); *In re Scheehle*, 134 Ohio App.3d 167, 730 N.E.2d 472, 475 (1999); *Kauffman v. Truett*, 771 A.2d 36, 39 (Pa.Super.2001); *Coffey v. Vasquez*, 290 S.C. 348, 350 S.E.2d 396, 398 (Ct.App.1986); *Estes v. Albers*, 504 N.W.2d 607, 608 (S.D.1993); *Swate v. Swate*, 72 S.W.3d 763, 771 (Tex.Ct.App.2002); *Virginia ex rel. Spotsylvania County Dep't of Soc. Servs. v. Fletcher*, 38 Va.App. 107, 562 S.E.2d 327, 329 (2002); *In re Dependency of G.C.B .*, 73 Wash.App. 708, 870 P.2d 1037, 1042 n. 6 (1994).

These jurisdictions conclude that child support obligations continue after parental rights have been terminated: *Evink v. Evink*, 214 Mich.App. 172, 542 N.W.2d 328, 331 (1995); *Rhode Island v. Fritz*, 801 A.2d 679, 685 (R.I.2002), *Rebecca Lynn C. v. Michael Joseph B.*, 213 W.Va. 744, 584 S.E.2d 600 (2003).

was awarded custody, and the father was ordered to pay child support. Almost one year later, the court terminated all parental rights of the father. Over five years later, the State of Nevada filed an action against the father seeking reimbursement for past welfare assistance payments and future support for the minor child.

¶ 10 The Nevada Supreme Court held that an order terminating parental rights completely severed the parent-child relationship, terminating all rights and obligations of both parent and child. *Vine,* 99 Nev. at 283, 662 P.2d at 297–298. The Nevada court quoted, with approval, *Anguis v. Superior Court,* 6 Ariz.App. 68, 71, 429 P.2d 702, 705 (Ariz.App. 1967), which held:

> "[W]e construe the term 'parental rights' in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations."

That sentence is quoted with approval by *County of Ventura v. Gonzales,* 88 Cal. App.4th 1120, 1123, 106 Cal.Rptr.2d 461, 464, and *Roelfs v. Wallingford,* 207 Kan. 804, 811, 486 P.2d 1371, 1376 (1971).

¶ 11 In *State of Kansas ex rel. Secretary of Social and Rehabilitation Services v. Clear,* 248 Kan. 109, 115, 804 P.2d 961, 965–966 (1991), the Supreme Court of Kansas noted that during the termination of parental rights the focus is "a final and permanent settlement of all problems of custody and supervision by a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other and by replacement of the

natural parent by another guardian or adoptive parent." Quoting *Roelfs,* 207 Kan. at 811, 486 P.2d 1371.

¶ 12 We conclude that the majority view of our sister states holding termination of parental rights also terminates parental duties is consistent with the wording of the applicable statute, 10 O.S.1981, § 1132, which in its present form still includes the phrase "termination of parental rights terminates the parent-child relationship." We hold that the termination of Father's parental rights terminated his duty to pay child support; and we affirm the decision of the trial court, which issued an injunction restraining further wage assignments for support obligations.

## ATTACK ON UNDERLYING JUDGMENT

¶ 13 DHS expresses concerns for the due process and equal protection rights of the minor children because they were not separately represented by an attorney in the termination of Father's parental rights. DHS presumably presents this argument to support its request that the order of the trial court in the present case be vacated. In reality, DHS is challenging the validity of the termination of Father's parental rights in hopes of reinstating his parental duty of support.

¶ 14 The order terminating Father's parental rights was dated April 21, 1989, and filed April 26, 1989. The facial validity of that order is not before this Court.

## DEBT CREATED BY 56 O.S.2001, § 238

¶ 15 DHS claims that pursuant to 56 O.S. 2001, § 238,[4] even if Father had no legal

---

4. "Any payment of public assistance money by the Department of Human Services, hereinafter referred to as 'Department,' to or for the benefit of any dependent child or children or a child in the custody of the Department creates a debt due and owing to the State of Oklahoma by the natural or adoptive parent or parents who are responsible for support of such child or children in an amount equal to the amount of public assistance money so paid.
"Provided, that any debt under this section shall not be incurred by nor at any time be collected from a parent or other person who is the recipi-

ent of public assistance monies for the benefit of minor dependent children for the period such person or persons are in such status.
"Provided further, that where there has been a court order, the debt shall be limited to the amount provided for by said order. The Department shall have the right to petition the appropriate court for modification of a court order on the same grounds as a party to said cause. The Department shall be subrogated to the right of said child or children to prosecute or maintain any support action or execute any administrative remedy existing under the laws of the State of

obligation to pay child support, he would still owe a debt to the State of Oklahoma as the 'natural parent'. The statute essentially provides that money paid by DHS for the benefit of a child creates under the circumstances described, a debt to the State of Oklahoma by the "natural or adoptive parent or parents who are responsible for support of such child in an amount equal to the amount of public assistance money so paid." DHS suggests that this statute should be construed to mean that "if there is no parent responsible for the support of the child, then the debt falls on the child's natural parent." We do not agree.

¶ 16 The statute creates the debt against the party "responsible for support of such child." The phrase "who are responsible for support of such child or children" modifies "the natural or adoptive parent or parents." If a natural parent or parents are responsible for support, then the public assistance paid on behalf of their child becomes their debt. If an adoptive parent or parents are responsible for support, the debt applies to them. The construction DHS attempts to give this statute is not supported by the language.

¶ 17 We have held that when Father's parental rights were terminated, his parental duties were also terminated. Accordingly, he is not a "parent ... responsible for support of such child."

¶ 18 This issue was addressed by the Court of Appeals of Georgia in *Department of Human Resources v. Ammons,* 206 Ga.App. 805, 426 S.E.2d 901 (1992), *cert. den.,* 263 Ga. 382, 436 S.E.2d 316 (1993). The father's parental rights had been terminated and the Department of Human Resources had provided public assistance benefits to the child. The Department brought an action to recover the amount of the benefits. Georgia's statute, as quoted in the case, provided: " "The payment of public assistance to or on behalf of a child creates a debt due and owing the state by the *parent ... responsible for the support of the child.*" OCGA § 19–11–5. (Emphasis supplied by *Ammons.*) The court reasoned that as the result of the termination order,

the father was not a parent who is responsible for the support of his child. If the child had no claim for support, neither did DHR on behalf of the child. *Ammons,* 206 Ga. App. at 806, 426 S.E.2d at 902.

¶ 19 In the case at bar, § 238, the third paragraph provides, "The Department shall be subrogated to the right of said child or children to prosecute or maintain any support action...." Where the child has no right to maintain an action for support, neither does DHS.

## CONCLUSION

¶ 20 We conclude that under the applicable statute, 10 O.S.1981, § 1132, effective at the time the termination order was handed down, the termination of Father's parental rights also terminated his parental duties. Therefore he had no duty to pay further child support after the termination order became effective. Because Father had no duty to pay further child support, there were no rights to assign to DHS, and no debt is created against Father owing to the State of Oklahoma for public assistance funds expended for the support of the minor child.

ALL JUSTICES CONCUR.

Oklahoma to obtain reimbursement of money thus expended."