[No. B141930. Second Dist., Div. Six. May 7, 2001.]

COUNTY OF VENTURA, Plaintiff and Respondent, v.
RAMON GONZALES, Defendant and Appellant.

COUNSEL

Patrick Reardon for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, and Mary A. Roth, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**COFFEE, J.**—Appellant Ramon Gonzales was ordered to pay child support after his parental rights were terminated under Welfare and Institutions Code section 366.26 (hereafter section 366.26). We conclude that an order terminating parental rights completely severs the parent-child relationship and deprives the court of the authority to make an award of child support.

### FACTS AND PROCEDURAL HISTORY

Appellant and Dawn F. are the biological parents of Jonathan F., who was born in 1984. Jonathan began receiving welfare benefits from respondent Ventura County in 1994. The county filed a complaint on Jonathan's behalf to establish appellant's paternity and obtain child support. (Former Welf. & Inst. Code, § 11350 et seq., now Fam. Code, § 17400 et seq.; Stats. 1999, ch. 478, § 1.)

Meanwhile, Jonathan was declared a dependent child of the juvenile court and removed from Dawn's custody. (Welf. & Inst. Code, §§ 300, 360, subd.

(c).) On December 6, 1999, the juvenile court terminated appellant's and Dawn's parental rights in a hearing under section 366.26.

The county filed a motion for judgment in the paternity action. The parties stipulated that appellant was Jonathan's biological father and agreed that the amount of support ordered, if any, would be the guideline amount under the Family Code. The sole issue to be determined by the court was whether appellant was obligated to pay child support after the date his parental rights to Jonathan were terminated.

The trial court ruled that the termination of appellant's parental rights did not eliminate his obligation to pay child support. It entered a judgment establishing appellant's paternity, setting child support at the guideline amount of $515 per month, and requiring appellant to reimburse the county for welfare benefits paid on Jonathan's behalf.

## DISCUSSION

Appellant claims the termination of his parental rights under section 366.26 ended his obligation to support Jonathan because it ended their parent-child relationship. No published decision has addressed this precise issue, but we agree with appellant that an order terminating parental rights also terminates parental responsibilities.

The Uniform Parentage Act defines the parent-child relationship as "the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." (Fam. Code, § 7601.) One such obligation is the duty of a parent to support his or her minor children. (Fam. Code, § 3900.)

The parent-child relationship and its attendant duty of support do not end when a child is declared a dependent of the juvenile court and removed from the parents' custody. (See *County of San Diego v. Guy C.* (1994) 30 Cal.App.4th 1325, 1332 [36 Cal.Rptr.2d 222].) To the contrary, the chief objective of the dependency law is the preservation or reunification of the family whenever possible. (*In re Michael G.* (1998) 63 Cal.App.4th 700, 712 [74 Cal.Rptr.2d 642].)

In some cases, however, the goal of reunifying a dependent child and his family cannot be met. California's juvenile dependency scheme requires the establishment of a permanent plan of adoption, guardianship or long-term foster care when a child has been removed from his parents' custody and cannot be safely returned within a prescribed period of time. The procedures

for selecting and implementing a permanent plan are now contained in section 366.26. (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 884 [55 Cal.Rptr.2d 396, 919 P.2d 1329].)

When the juvenile court determines that adoption is the permanent plan, it shall "[t]erminate the rights of the parent or parents and order that the child be placed for adoption and, upon the filing of a petition for adoption in the juvenile court, order that a hearing be set." (§ 366.26, subd. (b)(1).) An order terminating parental rights is not itself an adoption decree, but it frees the child from the custody and control of the birth parents as an interim step in the adoption process. (§ 366.26, subds. (e) & (j).) The termination order "shall be conclusive and binding . . . upon the parent or parents," and, subject to the parents' right of appeal, "[a]fter making the order, the court shall have no power to set aside, change, or modify it." (§ 366.26, subd. (i).)

Section 366.26 does not specify whether an order terminating parental rights also terminates the parental duty of support. But such a result is implicit. Under section 366.26, the purpose of a termination order is to free a child for adoption; i.e., to extinguish the child's ties to his biological parents and enable him to become a member of a new, stable family. (See Cal. Rules of Court, rule 1463(g); *Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2000) 83 Cal.App.4th 947, 949 [100 Cal.Rptr.2d 172]; *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1204 [101 Cal.Rptr.2d 449].) An order terminating parental rights " 'represents the total and irrevocable severance of the bond between parent and child.' " (*In re Linda W.* (1989) 209 Cal.App.3d 222, 226 [257 Cal.Rptr. 52].)

Although section 366.26 uses the phrase "termination of parental *rights*," the parent-child bond also includes parental obligations. (Fam. Code, § 7601.) " '[W]e construe the term 'parental rights' . . . as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations.' " (*Department of Human Resources v. Vine* (1983) 99 Nev. 278, 283 [662 P.2d 295, 298], quoting *Anguis v. Superior Court* (1967) 6 Ariz.App. 68, 71 [429 P.2d 702, 705] [analyzing similar statutes regarding parental duties and concluding that a termination of parental rights ends the duty of support].)

We think it significant that in a related context, an order terminating parental rights and freeing a dependent child for adoption clearly ends the parent's support obligation. Actions to free nondependent children from parental control are governed by Family Code section 7800 et seq., which includes a provision that "A declaration of freedom from parental custody

and control pursuant to this part terminates all parental rights and responsibilities with regard to the child." (Fam. Code, § 7803.) Former Civil Code section 232.6, which was one of the predecessor statutes to Family Code section 7800 et seq. and was applicable to dependent children before the enactment of section 366.26, similarly equated the termination of parental rights with the termination of parental responsibility. (Former Civ. Code, §§ 232, 232.6, repealed by Stats. 1992, ch. 162, § 2, p. 464; see *In re Olivia A.* (1986) 181 Cal.App.3d 237, 241 [226 Cal.Rptr. 382].)

Section 366.26 is now the exclusive vehicle for terminating parental rights when a child has been declared a dependent of the juvenile court, but there is no indication that the Legislature intended to alter the meaning or effect of the termination order itself. Generally speaking, identical words in different statutes relating to the same subject matter are construed as having the same meaning. (*Chandis Securities Co. v. City of Dana Point* (1996) 52 Cal.App.4th 475, 486 [60 Cal.Rptr.2d 481].) Absent a clear indication to the contrary, an order terminating parental rights under section 366.26 should be given the same meaning and effect as a termination of parental rights under Family Code section 7800 et seq. and its predecessor statutes.

We are not persuaded by the county's reliance upon *In re Marriage of Dunmore* (2000) 83 Cal.App.4th 1, 4-5 [98 Cal.Rptr.2d 885]. There the father was ordered to pay child support, notwithstanding a finding under Family Code section 8604 that a stepparent adoption could proceed without his consent. Section 8604 permits an adoption to proceed without the consent of a parent who has willfully failed to communicate with and support his child for one year, but a finding under its provisions does not itself sever the parent-child relationship. The *Dunmore* court emphasized that a section 8604 finding was not the equivalent of an order terminating parental rights, suggesting that it believed a termination order would vitiate the duty to pay support. (83 Cal.App.4th at pp. 4-5.)

The county also relies upon *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 856-857 [146 Cal.Rptr. 26], in which the court concluded that a father whose parental rights had been terminated under former Civil Code section 232 could be ordered to pay child support. *O'Connell* was decided before the enactment of former Civil Code section 232.6, which, as noted above, made a termination of parental rights under former section 232 synonymous with a termination of parental responsibility. Moreover, it appears that the parents in *O'Connell* had improperly used the termination proceeding as a method of gaining an advantage over one another on support and visitation issues. The troubling facts of *O'Connell* and its later abrogation by statute make that decision a slim reed upon which to lean.

Finally, the county relies on Family Code section 8617, which states, "[t]he birth parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the adopted child, and have no right over the child." It argues that under this section, a parent must pay support until the child is adopted. Section 8617 is a general statute applicable to all adoptions of unmarried minors, not merely those that follow a termination of parental rights. The declaration that adoption ends a birth parent's obligations in all cases does not resolve whether a termination order itself ends a parent's duty to provide support.

## DISPOSITION

The judgment is modified to provide that the obligation to pay child support at the stipulated rate of $515 per month terminated on December 6, 1999. As so modified, the judgment is affirmed. Costs are awarded to appellant.

Gilbert, P. J., and Yegan, J., concurred.

On May 14, 2001, the opinion was modified to read as printed above.