[No. G029235. Fourth Dist., Div. Three. June 28, 2002.]

COUNTY OF ORANGE, Plaintiff and Appellant, v.
FREDDIE ROSALES, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Charlton G. Holland, III, Assistant Attorney General, Frank S. Furtek and Mary Dahlberg, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**SILLS, P. J.—**

### I.

Superficially, this appeal follows the pattern of several welfare reimbursement cases that have recently come before this court: In the early 1990's, the Orange County District Attorney's Office on behalf of the County of Orange filed a complaint for reimbursement of welfare monies expended on the defendant's children, the defendant filed no answer, and the county quickly obtained a preliminary (expedited) child support order. The county then did nothing about the case for about a decade. During that time the defendant did not pay on the preliminary order. Interest mounted up. Then the county obtained a default judgment for a comparatively large sum (as we shall see, an astronomically large sum in comparison to the defendant's probable earning potential). In response to the default judgment, the defendant made a motion to dismiss the case based on the fact it hadn't been brought to trial within five years of the filing of the complaint. (See Code Civ. Proc., §§ 583.310, 583.360.) The trial court granted the motion, and the county appealed from the ensuing order of dismissal.

But this case has a big difference—this time we will affirm the trial court's dismissal order. This is a classic case of the right hand not knowing what the left hand is doing: During the time the county was doing nothing to prosecute its welfare reimbursement action, the county was also busy seeking the termination of all parental rights. When it succeeded in January 1995, as we show below, any obligation of the defendant to pay on the temporary order terminated as a matter of law. At that point there was nothing to prevent the operation of the five-year rule, and it was the mandatory duty of the court to dismiss it.

### II.

Just as Tolstoy noted that every unhappy family is unhappy in its own way, there are individual poignancies in these sorts of cases, and this case has more than its share. The parent here, Freddie Rosales, was himself, in his own words, "born to two parents who were gang members, and after [he] was born became heroin addicts." He spent his childhood living with relatives until he was 13 years old, then he dropped out of school. He spent his teenage years as a heroin addict on the streets.

During the 1980's Rosales fathered three children. (All three children, F., J., and S., bore his last name). However—at least according to the complaint

for welfare reimbursement filed in June 1990—by December 1989 he had "separated" from them, and the county was obligated to pay welfare on their behalf. By December 1990 the county had obtained an expedited child support order requiring him to pay $694 a month for the three children (the "AFDC minimum").

The record does not give much in the way of clues as to what Rosales did in the period 1990 through 1996, but the period certainly didn't end happily for him. In April 1996 he was sent to prison, based on a "petty theft with a prior due to drug addiction" (his words again).

Meanwhile he lost his children. They became dependents of the juvenile court, and Rosales's rights to them were terminated on January 3, 1995.

In prison, Rosales underwent a religious conversion. A letter from a prison chaplain sent to the trial judge is very complimentary as to the help he had given the chaplain. He completed classes in parenting, chemical dependency, anger management, as well as a vocational class in refrigeration and air conditioning. By March 2001 Rosales was out of prison and working as an "installer" at a firm in Norwalk.

But with his new life, he faced a staggering judgment against him: In December 1999, the county had obtained a default judgment in the amount of—including interest—$94,081.95 based on arrearages through November of that year.[1] The judgment required a monthly payment of $2,822.46. In his job as an installer, Rosales was earning $1,310 a month, gross.

Well, there are times when an adversary doesn't obtain the uttermost farthing on a judgment, and this was one of them. The trial court released Rosales from the judgment after a hearing in May 2001, based on the county's failure to bring the case to trial within five years of the complaint. The county, represented by the Attorney General's Office, then appealed. Though Rosales has not filed a respondent's brief, we follow the admonition of our Supreme Court in *In re Bryce C.* (1995) 12 Cal.4th 226, 233 [48 Cal.Rptr.2d 120, 906 P.2d 1275], that the " 'better rule . . . is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found.' "

---

[1]To add insult to interest, the $94,081.95 figure was based on arrearages during the period 1995 through 1999, that is, the *county* was seeking back-due child support even after the *county* had obtained an order terminating parental rights! That really is a bit like the classic example of chutzpah—the person who murders his father and mother and then asks for mercy on the ground he is an orphan.

## III.

In *County of Orange v. Quinn* (2002) 97 Cal.App.4th 956 [118 Cal.Rptr.2d 833], this court explored the relationship between the mandatory five-year rule as spelled out in the Code of Civil Procedure (specifically §§ 583.310 and 583.360 of that code) and several other statutes related to child support cases bearing on the operation of the rule.

First, we didn't try to rewrite section 583.161 of the Code of Civil Procedure to make it broader than the Legislature made it: That statute *does* provide for an exception to the five-year rule for marital dissolution cases where *unterminated* orders for child or spousal support have been issued. (See *County of Orange v. Quinn, supra*, 97 Cal.App.4th at p. 960.) But there is no question that the statute is confined to marital dissolution cases. It opens with the words " 'No petition filed pursuant to Section 2330 of the Family Code . . . .' "

Second, we noted the apparent anomaly created by the Legislature's choice of words in Code of Civil Procedure section 583.161. The statutes in the Code of Civil Procedure, if read in isolation, lead to the conclusion that the Legislature gave greater protection to children who are the subject of support orders issued in marital dissolution cases than to children in other kinds of cases. (*County of Orange v. Quinn, supra*, 97 Cal.App.4th at p. 961.)

Third, we examined Family Code sections 3600 and 3601, and found in those statutes that the Legislature provided a solution for the anomaly by expressly providing that all child support orders, regardless of the kind of case that engenders them, must "continue" in effect until terminated in certain enumerated ways. In that regard we looked to Family Code section 3601, subdivision (a), which provides: "An order for child support entered pursuant to this chapter continues in effect until the order (1) is terminated by the court or (2) terminates by operation of law pursuant to [Family Code] Sections 3900, 3901, 4007, and 4013." (See *County of Orange v. Quinn, supra*, 97 Cal.App.4th at p. 962.)

Recognizing that the operational words of Family Code section 3601, subdivision (a) were "An order . . . continues . . . ," and not "A case . . . continues . . . ," we reasoned that the "operation" of the statute had "necessary consequences." (*County of Orange v. Quinn, supra*, 97 Cal.App.4th at p. 962.) "If a pendente lite *order* 'continues' until, say, a child is out of high school, then it follows that the *case* supporting the order cannot be dismissed at least until then. Any other result is nonsensical." (*Ibid.*, italics added.) Thus, "when the Legislature said all pendente lite child [support] *orders* are

exempted from the five-year rule, it necessarily also said that all *cases* in which pendente lite orders have been obtained are exempted as well." (*Ibid.*, original italics.)

But one should not overread *Quinn*. It is a case based on the operation of Family Code section 3601, subdivision (a), and, strictly speaking, Family Code section 3601, subdivision (a) doesn't say that if a pendente lite child support order is *once* obtained in a case it is *forever* immune from the five-year rule. Rather, the statute provides that a child support order must continue until it terminates by operation of certain enumerated laws, and it follows from *that* that a case cannot be dismissed as long as there is a continuing child support order in it.

But it also follows that if there is no "continuing" child support order under Family Code section 3601, the case *can* be dismissed. The key question before us then is whether the termination of Rosales's parental rights in 1995 also terminated the preliminary child support order obtained in 1990.

Section 3601, subdivision (a) of the Family Code, states that pendente lite child support orders continue in effect until the order "terminates by operation of law pursuant to" several provisions in the Family Code, one of which is section 3900. Family Code section 3900 consists of one sentence: "Subject to this division, the father and mother of a minor child have an equal responsibility to support their child in the manner suitable to the child's circumstances." For our purposes in this case, the operative words are "their child."

The question of whether the termination of parental rights severs the obligation of a parent to support a child who was *formerly* "his" or "hers" was dispositively answered last year in *County of Ventura v. Gonzales* (2001) 88 Cal.App.4th 1120 [106 Cal.Rptr.2d 461]. The decision was unambiguous: "We conclude that an order terminating parental rights completely severs the parent-child relationship and deprives the court of the authority to make an award of child support." (*Id.* at p. 1121.)

It would be ridiculous to contend that the termination of the duty of support pursuant to the termination of parental rights is not a termination by operation of law pursuant to section 3900 of the Family Code.[2] The whole point of the termination of parental rights, as the *Gonzales* opinion

---

[2]Family Code section 3601, subdivision (a) references four Family Code statutes, sections 3900, 3901, 4007, and 4013 in the conjunctive, not disjunctive (i.e., it uses the word "and," not "or"). Does this syntax imply that an order must continue unless it "terminates by

demonstrates, is that such an order frees up the child for adoption by someone else. (See *County of Ventura v. Gonzales, supra*, 88 Cal.App.4th at p. 1123.) Such an order is the " ' "total and irrevocable severance of the bond between parent and child." ' " (*Ibid.*, quoting *In re Linda W.* (1989) 209 Cal.App.3d 222, 226 [257 Cal.Rptr. 52].) That is why, in the context of dependency law, care is taken to assure that parental rights should not be terminated unless there is "clear and convincing" evidence that the child "will be adopted." (Welf. & Inst. Code, § 366.26, subd. (c)(1).) ▮ It thus follows that when parental rights are terminated, the core of the support obligation expressed in Family Code section 3900—that a parent must support his or her minor children—has terminated as well.

In the case before us, the deputy district attorney at the hearing on the motion to dismiss under the five-year rule represented to the court that parental rights were terminated for all three of Rosales's children on January 3, 1995. Applying *Gonzales* to the case at hand, we must conclude that Rosales's parental rights—and child support obligations—terminated by operation of law pursuant to Family Code section 3900 on that date. As of January 4, 1995, the three children were no longer *his*.

The rationale of *Quinn* was that a case in which a child support order has been made should continue as long as the order itself must continue. Given such a rationale, *Quinn* is not applicable here. As of the date of the motion to dismiss pursuant to the five-year statutes, there was no viable pendente lite child support order in effect. It had been extinguished by operation of law. All that was left was a collection action on a terminated temporary support order.

The final question is whether the time from 1990 through 1995 during which the expedited child support order "continued" in effect should somehow toll the running of the five years pursuant to Code of Civil Procedure section 583.340. That statute excludes from the five years any time during which the jurisdiction of the court "to try" the case was suspended (subdivision (a)), the prosecution of the case was "stayed or enjoined" (subd. (b)),

---

operation of law" under *all* four statutes? No, that would be a silly way to read the statute, because it would be impossible for all the statutes to apply in any one instance. Read in that way, the "terminates by operation of law" clause in Family Code section 3601, subdivision (a) could only be triggered if (1) an order terminating parental rights (cf. Fam. Code, § 3900) was made at the same time a child was (2) turning 18 after having graduated from high school (cf. Fam. Code, § 3901), which also (3) coincided with some contingency contained in a previous court order (cf. Fam. Code, § 4007) and also coincided with (4) an order in a bankruptcy court discharging the whole thing anyway (cf. Fam. Code, § 4013). Obviously Family Code section 3601 means that a child support order terminates if any *one* of the statutes listed in subdivision (a) terminates the existing order by operation of law.

or bringing the action to trial was "impossible, ˙impracticable, or futile" (subd. (c)).

The answer is no. Again, the key fact is the structure of the exception to the five-year rule on which we relied in *Quinn*, Family Code section 3601, subdivision (a). Remember that Family Code section 3601 subdivision (a) only provides that the child support order "continues in effect" until termination. It *doesn't* prevent trial on the complaint. (Indeed, such a reading would be absurd because it would mean that paternity cases where preliminary child support orders are obtained could not come to trial soon after the complaint.) The consequence of the statute is merely that a case cannot be *dismissed* pursuant to the five-year rule during which a child support order remains in effect—there is nothing that prevents the case from coming to trial in that period. Once the child support order terminates, there is nothing to prop up the case against dismissal pursuant to the five-year rule. Under such circumstances, therefore, we must conclude that the trial court acted correctly in dismissing the action for failure to prosecute.[3]

## IV.

We need only add under these facts there is no equal protection problem (cf. *Thompson v. Thames* (1997) 57 Cal.App.4th 1296 [67 Cal.Rptr.2d 695]) either. The equal protection argument which this court explicitly "sh[ied] away" from in *Quinn* is based on the wholly sensible idea that the equal protection clauses of the state and federal Constitutions do not allow statutes to distinguish between children born in wedlock and those born out of it. From that premise one might (at least for sake of argument) extract the proposition that section 583.161 of the Code of Civil Procedure is unconstitutionally underinclusive by failing to include actions for the support of children born outside of marriage within its reach, and then perhaps go on to conclude that the obvious remedy should be to imply into it an exemption for such actions. (Cf. *Thompson v. Thames, supra,* 57 Cal.App.4th at p. 1310.)

Maybe. We certainly engaged in no such radical augmentative surgery on the statute in *Quinn* and do not intend to do so here. In any event the equal

---

[3]Several statutes preclude or limit the retroactive modification or termination of a support order. (See Fam. Code, §§ 3651, subd. (c), 3653, subd. (a).) The trial court's dismissal did not offend these statutes. The *dismissal* did nothing to retroactively modify or even terminate the 1990 expedited child support order. That order merely terminated by *operation of law* in 1995 pursuant to Family Code section 3900. While the dismissal may have made the accrued arrearage from 1990 to 1995 impossible to *collect,* it did not affect the amount of the arrearage at all. There is a distinction between the *amount* of a claim, which indeed may not be subject to retroactive modification or termination, and the *ability* to collect it, which can easily be botched by prolonged inaction.

protection argument has no force where there are *no children* to be treated differently based on their marital status, and the case is entirely a debt collection action.

Code of Civil Procedure section 583.161 itself illustrates the point. While the statute is limited to marital dissolution cases, it provides that no case shall be dismissed pursuant to the five-year statutes "if any" of certain conditions exist, one of which is that an order for child support has been issued in connection with the proceeding and—in language that tracks section 3601, subdivision (a) of the Family Code—"the order has not been . . . terminated by operation of law pursuant to Sections 3900, 3901, 4007, and 4013 of the Family Code."

California law thus doesn't treat children born out of wedlock any differently from children born in wedlock. Consider the hypothetical of a marital dissolution case where a divorcing couple has one child, age 17 and six months, who has already graduated from high school. Early in the dissolution action, one parent obtains a pendente lite child support order. No spousal support order is obtained, nor is any proceeding brought to dissolve the status of the marriage. (Cf. Code Civ. Proc., § 583.161, subds. (b) & (c).) Nothing else is done either. Six months go by, and the pendente lite order terminates by operation of law when the child turns 18. (Cf. Fam. Code, § 3901, subd. (a).) Another six years go by and nothing is done to bring the case to trial. Under those circumstances, Code of Civil Procedure section 583.161 would allow application of the five-year rule even in a marital dissolution case.

## V.

The order of dismissal is affirmed. The county will obviously bear its own costs on appeal.

Rylaarsdam, J., and O'Leary, J., concurred.

A petition for a rehearing was denied July 19, 2002, and the opinion was modified to read as printed above.