MOORE, Judge,
dissenting.
I respectfully dissent from the holding in the main opinion because I conclude that a judgment entered pursuant to the Alabama Child Protection Act (“the CPA”), § 26-18-1 et seq., Aa.Code 1975, involuntarily terminating the parental rights of a parent to his or her natural children does not, by operation of law, extinguish the parent’s responsibility to pay child support for the benefit of those children as established by a prior judgment of the circuit court.
Section 26-18-7(a), Aa.Code 1975, provides, in part:
“If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
(Emphasis added.) The statute very clearly states that a juvenile court may terminate the parental rights of a parent who is unable or unwilling to discharge his or her parental responsibilities.
The CPA does not define the meaning of “responsibilities to and for the child” and “parental rights.” However, the Aabama Juvenile Justice Act (“the AJJA”), § 12-15-1 et seq., Aa.Code 1975, clarifies the legislative meaning of those terms. Section 12-15-1(17), Aa.Code 1975, defines “legal custody” as
“[a] legal status created by court order which vests in a custodian the right to have physical custody of the child and to determine where and with whom the child shall live within the state and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, clothing, education, and ordinary medical care, all subject to the powers, rights, duties, and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities .... ”
The AJJA then provides that “residual parental rights and responsibilities” include:
“[tjhose rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of *1110 the person, including, but not necessarily limited to, the right of visitation, the right to consent to adoption, the right to determine religious affiliation, and the responsibility for support.”
§ 12-15-1(24), Ala.Code 1975. Our supreme court has stated that related statutes should, when possible, be construed in pari materia,[2] Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 988 (Ala.1999), and that legislative definitions are binding on the court. See McWhorter v. State Bd. of Registration for Prof'l Eng’rs & Land Surveyors, 359 So.2d 769, 773 (Ala.1978).
Reading the statutory definitions of parental rights and responsibilities found in § 12-15-1 into § 26-18-7 reveals the legislature’s intent:
“If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their [parental duties, including the duties to protect, to educate, to care for, to provide for, to maintain, and to support the child], or that the'conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the [parents’ rights, including the rights to custody, to visitation, to control the child’s education, training, discipline, and religious affiliation, and to consent to adoption].”
Construing the two statutes together, if a juvenile court finds clear and convincing evidence indicating that a parent is unable to discharge his or her parental responsibilities, the juvenile court may on that basis terminate the rights of the parent to the child,[3] but not the parent’s responsibility to provide child support.[4]
Even if the court cannot read § 12-15-1 into § 26-18-7, the term “parental rights” cannot be construed to encompass the responsibility for child support.
“Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.”
*1111 IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). The term “parental rights” ordinarily refers to
“[a] parent’s rights to make all decisions concerning his or her child, including the right to determine the child’s care and custody, the right to educate and discipline the child, and the right to control the child’s earnings and property.”
Black’s Law Dictionary 1146 (8th ed.2004). A “right” is “something to which one has a just claim: as ... the power or privilege to which one is justly entitled.” Merriam-Webster’s Collegiate Dictionary 1073 (11th ed.2003). Legally speaking, a “responsibility” is a “liability.” Black’s Law Dictionary 1338 (8th ed.2004). Even in the more ordinary usage, “responsibility” refers to a burden for which one is accountable. See Merriam-Webster’s Collegiate Dictionary 1062 (11th ed.2003). A “parental responsibility,” therefore, would be a burden or liability one owes due to his or her status as a parent. Hence, even without reference to § 12-15-1, the CPA authorizes a juvenile court to terminate those parental rights that Alabama law recognizes for the inability or unwillingness of the parent to properly discharge his or her legal duties to the child.
Alabama law has long recognized that a parent has a natural legal right to the custody, companionship, care, and rearing of his or her child but that the. parent also has a legal obligation to support, care, and train the child. Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939); P.Y.W. v. G.U.W., 858 So.2d 265, 267 (Ala.Civ.App.2003). Alabama law holds that it is the child who possesses the inherent and fundamental right to support from the parent. Abel v. Abel, 824 So.2d 767, 768 (Ala.Civ.App.2001). A custodial parent has no right to child support but merely receives support on behalf of the child whose right it is. State ex rel. Dep’t of Human Res. v. Sullivan, 701 So.2d 16 (Ala.Civ.App.1997). On the other hand, Alabama law impresses upon parents a legal duty to support their minor children. Ex parte McCall, 596 So.2d 4 (Ala.1992); Miller v. Miller, 866 So.2d 1150, 1157-58 (Ala.Civ.App.2003); and Davis v. Gyllenhaal-Davis, 516 So.2d 665 (Ala.Civ.App.1987). A parent may be held civilly or criminally liable for a failure to discharge the responsibility to support his or her child. See Ex parte University of South Alabama, 541 So.2d 535 (Ala.1989); Ala.Code 1975, § 13A-13-4.
As a matter of plain English, the CPA, in áuthorizing a juvenile court to “terminate the parental rights” of a parent, does not empower a juvenile court to terminate child support. Had the legislature intended that a termination of “parental rights” would also include a termination of “parental responsibilities,” such as the responsibility to support the parent’s children, it could have used language apt to that purpose. For example, the Alabama Adoption Code, Ala.Code 1975, § 26-10A-1 et seq., provides that a parent who consents to the adoption of his or her child forfeits “all rights and obligations,” Ala.Code 1975, § 26-10A-ll(a)(6) (emphasis added), and that “[u]pon a final decree of adoption, the natural parents of the adoptee, except for a natural parent who is the spouse of the adopting parent are relieved of all parental responsibility for the adoptee and will have no parental rights over the adoptee.” Ala.Code 1975, § 26-10A-29(b) (emphasis added). It appears that the legislature deliberately worded § 26-18-7 to authorize only a termination of parental rights, not parental responsibilities. “ ‘The judiciary will not add that which the Legislature chose to omit.’ ” State v. Dean, 940 So.2d 1077, 1080 (Ala.Crim.App.2006) (quoting Ex parte Jackson, 614 So.2d 405, 407 (Ala.1993)). The only way to give the plain language of the CPA its intended effect is to hold that a termination of pa *1112 rental rights does not automatically terminate the parent’s child-support obligation.
Although I find no ambiguity in § 26-18-7, if the language of a statute is ambiguous the court is bound to construe the statute to give effect to the legislative purpose behind its enactment. IMED Corp., 602 So.2d at 346. The purpose of the CPA is
“to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.”
Ala.Code 1975, § 26-18-2. Section 26-18-7 provides a means of terminating parental rights when a child’s welfare is threatened by continuation of those rights. Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987), overruled on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990). “ ‘Paramount in a determination regarding the termination of parental rights is a consideration of the child’s best interest.’ ” J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1193 (Ala.Civ.App.2007) (quoting T.S. v. J.P., 674 So.2d 535, 537 (Ala.Civ.App.1995)) (emphasis omitted).
In interpreting § 26-18-7 so that a judgment involuntarily terminating parental rights automatically discharges a parent from liability for future child support, the majority undermines the purpose of the statute in at least two ways. First, in many cases it will force responsible parents to choose between filing a petition to terminate the parental rights of an abusive and neglectful coparent to protect their children or to forgo filing such a petition in order to preserve the children’s right to support. Second, in many cases, including this one, the majority’s interpretation will require children to depend on state aid that may be far less remunerative than the child support to which they would otherwise be entitled.
On the other hand, by interpreting § 26-18-7 according to its plain language, the court would assure the fullest possible relief for the child. A judgment terminating parental rights immediately and permanently severs the parent’s right to custody, control, and affiliation with the child. See In re Grayson, 419 So.2d 234, 237 (Ala.Civ.App.1982) (Bradley, J., concurring specially). The judgment protects the child from the potential for future harm flowing from the affected parent by forever preventing the parent from asserting any parental rights. However, the child will continue to be entitled to at least one beneficial aspect of that relationship if the parental obligation for support remains undisturbed. Responsible parents would not have to fear jeopardizing their children’s right to support by filing meritorious petitions for termination of parental rights. Irresponsible parents would realize that they cannot escape liability for child support by abusing or neglecting their children. In addition, dependent children would not have to rely entirely on the state for subsistence.
The majority contends that the purpose of the CPA to promote stability and permanency for dependent children will be served by its holding because a child can be adopted only if the prior parental relationship has been totally severed. 39 So.3d at 1108 (quoting Kansas ex rel. Sec’y of Soc. & Rehab. Servs. v. Clear, 248 Kan. 109, 116, 804 P.2d 961, 966 (1991)). However, holding that the duty to pay child support survives a judgment terminating parental rights does not impede the goal of providing stability and permanency for the child. The duty to support the child merely lasts after the judgment terminating *1113 parental rights until the child is actually adopted, at which point the duty is extinguished by operation of § 26-10A-29(b).[5] Moreover, it is the completion of the adoption that totally severs the parental relationship, id., so the parent’s obligations to the child need not be totally severed before adoption. Nothing in Alabama law prevents a child from entering the adoption process merely because its natural parent, whose parental rights have been terminated, remains under court order to support the child. Although the majority’s interpretation of the CPA seriously subverts the best interests of the child, it does not provide the child any corresponding benefit by advancing the purpose of the statute in any material respect.[6]
The majority’s reading of § 26-18-7 also violates established law that once a circuit court enters a child-support order in a divorce proceeding, the circuit court retains exclusive jurisdiction to modify that order, which precludes a juvenile court from adjudicating child-support issues in a termination-of-parental-rights action. See A.S. v. W.T.J., 984 So.2d 1196, 1202 (Ala.Civ.App.2007). In this case, the trial court entered a child-support order as part of a divorce judgment in February 2008, requiring the father to pay $540 per month for the benefit of his children. If the majority is correct, the juvenile court terminated that child-support obligation in October 2005, although it lacked jurisdiction to do so. Rather than bestow upon juvenile courts jurisdiction that this court has heretofore not recognized, we should hold that the trial court had exclusive continuing jurisdiction over its own child-support order and that the judgment terminating parental rights could not have possibly affected the father’s obligation as established in that order.[7]
To sustain its holding, the majority opinion relies on statements from past opinions of our supreme court and of this court that indicate “that a parent is no longer obligated to pay child support after that parent’s parental rights have been terminated.” 39 So.3d at 1113. In Ex parte Brooks, supra, the supreme court held that a father could not voluntarily agree to a termination of his parental rights for the sole purpose of avoiding his child-support obligation. In the opinion, the court assumed that a judg *1114 ment terminating parental rights would end the father’s obligation to pay child support. 513 So.2d at 617. The Brooks court did not cite any legal authority for that proposition. It also utterly failed to consider whether a judgment may terminate parental rights without affecting parental responsibilities, such as the duty to support the child. At any rate, the Brooks court did not actually decide that the judgment had the effect of terminating child support, which renders its discussion pure dicta. All the other cases cited by the majority either rely directly on Brooks, see C.M. v. D.P., 849 So.2d 963, 965-66 (Ala.Civ.App.2002),[8] State ex rel. McDaniel v. Miller, 659 So.2d 640, 642 (Ala.Civ.App.1995), J.C. v. State’Dep’t of Human Res., 986 So.2d at 1202,[9] or, like Brooks, on no legal authority at all. See Ex parte University of South Alabama, 541 So.2d at 538. Alabama law actually holds that the only events that impliedly terminate child support are the child’s reaching the age of majority, see State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995), the emancipation of the child, see Anderson v. Loper, 689 So.2d 118, 120 (Ala.Civ.App.1996) (citing B.A. v. State Dep’t of Human Res. ex rel. R.A., 640 So.2d 961, 962 (Ala.Civ.App.1994)), the adoption of the child, see Ala.Code 1975, § 26-10A-29(b), and the death of the child or the obligor-parent, see Pittman v. Pittman, 419 So.2d 1376, 1380 (Ala.1982).
It is true that the vast majority of other states have construed their termination-of-parental-rights statutes so as to encomp.ass termination of child support.[10] However, *1115 most other state statutes explicitly state that a termination of parental rights completely severs the parent-child relationship, see, e.g., 10 Okla. Stat. tit. 1981, § 1182 (cited in McCabe v. McCabe, 78 P.3d 956, 958 (Okla.2003)), Fla. . Stat. 63.062(1)(b) (quoted in Ponton v. Tabares, 711 So.2d 125, 126 (Fla.Dist.Ct.App.1998)), and Miss.Code Ann. § 93-15-103(2) (quoted in Beasnett v. Arledge, 934 So.2d 345, 347 (Miss.Ct.App.2006)), or terminates the rights and responsibilities of the parent to the child,[11] see Cal. Family Code § 7803 (quoted in County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 1121, 106 Cal.Rptr.2d 461, 462 (2001)). In other states the term “parental rights” has been construed to mean “parental rights and responsibilities” based on a passage from Anguis v. Superior Court in and for Maricopa County, 6 Ariz.App. 68, 429 P.2d 702 (1967),[12] in which the court stated:
“We are faced here with the limited question of whether or not the Juvenile Court may conduct a hearing and sever the parental rights of a parent to a child without there first being a pending adoption. Before we consider this matter we must consider the meaning of the term ‘parental rights’. The rights of a parent regarding its child are quite often confused with parental obligations or the rights of the child to care, custody, support, inheritance and other obligations from the parent to the child. Our statute A.R.S. § 14-206, for example, provides that every child is entitled to support and education from its natural parents. As used herein we construe the term ‘parental rights’ in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations.”
6 Ariz.App. at 71, 429 P.2d at 705. Notably, that passage is totally devoid of any use of the rules of statutory construction or any other legal reasoning. It appears that the court simply decided without any basis that the term “parental rights” as *1116 used in Arizona’s termination-of-parental-rights statute means “both parental rights and parental obligations.” I find that “analysis” to be totally unpersuasive.[13]
On the other hand in State of Rhode Island v. Fritz, 801 A.2d 679 (R.I.2002), the court held that a termination of parental “rights” does not terminate the parent’s responsibility to pay child support by operation of law. The court said:
“Although some courts, absent a specific statutory provision or statutory ambiguity, have held that termination of parental rights ends financial obligations as well, it is our opinion that under current Rhode Island statutes, parental financial support continues until a child has been emancipated, adopted, reaches the age of majority, or until the obligation has been duly terminated after the Family Court has held a hearing and issued an order stating its findings.
“In some jurisdictions, the term ‘parental rights’ has been interpreted as incorporating all the rights of the parental relationship, including not only those rights that flow to the parent, but also those, such as the right to financial support, that flow to the child. See, e.g., County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 106 Cal.Rptr.2d 461, 464 (2001) (citing State Welfare Division, Department of Human Resources v. Vine, 99 Nev. 278, 662 P.2d 295, 298 (1983)). The plain language of Rhode Island’s termination of parental rights statute, § 15-7-7, addresses only the ‘legal rights of the parent to the child’ and not the reciprocal rights of the child with respect to the parent. Because this Court consistently has declined “‘[to] interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication,”’ Wehr, Inc. v. Truex, 700 A.2d 1085, 1088 (R.I.1997) (per curiam) (quoting State v. Feng, 421 A.2d 1258, 1264 (R.I.1980)), we interpret the General Assembly’s silence as an indication that it did not intend that § 15-7-7 terminate the right of the child to support by the parents.”
801 A.2d at 685.
The majority relies on the principle from Coffey v. Vasquez, 290 S.C. at 350, 350 S.E.2d at 397-98, that the duty of support is “‘correlative to the parent’s rights in and to the child.’ ” 39 So.3d at 1108. However, that statement is not consistent with Alabama law, which provides that a parent remains obligated to pay child support even when the parent has no custodial rights and the children refuse visitation, McWhorter v. McWhorter, 705 So.2d 423 (Ala.Civ.App.1997), or even when the noncustodial parent has no contact with the child. See Kernop v. Taylor, 628 So.2d 707 (Ala.Civ.App.1993).[14] Our law is more *1117 consistent with that of West Virginia, which holds that “the duty to pay child support and the right to exercise visitation are not interdependent.” Carter v. Carter, 198 W.Va. 171, 177, 479 S.E.2d 681, 687 (1996). Accordingly, the West Virginia Supreme Court has held that the mere fact that all parental rights, including the right to visitation, have been terminated does not impact the parent’s duty to support the child. In re Stephen Tyler R., 213 W.Va. 725, 742, 584 S.E.2d 581, 598 (2003).
Based on the foregoing, I would reverse the trial court’s judgment and remand the case with instructions that the court enter a judgment in favor of the mother for all child support accruing after the entry of the judgment terminating parental rights. Because the majority affirms the judgment, I respectfully dissent.

. Opinions too numerous to cite herein recognize the interplay between the CPA and the AJJA. Any doubt as to their relationship is erased by the recent legislative amendments to the juvenile code that merge the CPA and the AJJA. See Act No. 2008-277, Ala. Acts 2008.

. The new juvenile code, which takes effect on January 1, 2009, defines "termination of parental rights” as "[a] severance of all rights of a parent to a child.” Ala. Acts 2008, Act No. 2008-277, § 16. This definition clarifies the legislative intent that a judgment terminating parental rights severs the rights of the parent to the child but does not sever the rights of the child to the parent, which includes the right to support. See Ex parte Tabor, 840 So.2d 115, 120 (Ala.2002), quoting with approval Willis v. Levesque, 402 So.2d 1003, 1004 (Ala.Civ.App.1981) (recognizing that children have an inherent right to child support from parents). When a legislature amends a statute to define a previously undefined term, it must be considered that the legislature has attempted to clarify any ambiguity in that term and the court should take notice of that action when determining the legislative intent. See Alfa Mut. Ins. Co. v. City of Mobile, 981 So.2d 371, 383 (Ala.2007).

.I do not mean to be understood as saying that a juvenile court may never terminate child support. I am merely saying that § 26-18-7 does not authorize a juvenile court to terminate child support based solely on clear and convincing evidence supporting grounds for termination of parental rights.

. Adoption also terminates the child’s right of inheritance from the natural parent whose rights have been terminated and the child's right to postminority support, which is a form of child support, from that parent. See Comment to Ala.Code 1975, § 26-10A-29(b), and Ala. Code 1975, § 43-8-48.

. The majority argues that the child receives the benefits of having all ties with the parent severed. However, the purpose of the CPA is to sever the child solely from the harm emanating from the parental relationship, Ex parte Brooks, supra, not from its monetary benefits.

. A circuit court that has entered a judgment containing a child-support order may modify that order based on a material change of circumstances affecting the best interests of the child. See, e.g., Campbell v. Tolbert, 656 So.2d 828 (Ala.Civ.App.1994). Although not necessary to resolve the precise issue before the court, I note that the trial court would have had jurisdiction to consider any petition filed by the father to terminate his child-support obligation after his parental rights had been terminated. Although I believe that the mere termination of parental rights is insufficient to prove a material change of circumstances and that it would rarely be in the best interest of the child to terminate child support, it is possible that under some circumstances a circuit court could conclude that terminating child support wotild prevent exposing the child further to the parental conduct, condition, or circumstances underlying the judgment terminating parental rights. Regardless of the merits of the petition, only the circuit court that entered the divorce judgment would have jurisdiction to make that determination.

. In the hearing on the postjudgment motions in this case, both parties cited Brooks and CM. in support of their positions. The trial court obviously relied on those cases in reaching its conclusion that juvenile courts are required to consider the impact of a judgment terminating parental rights on the child’s right to future child support; however, the only statements in those cases relating to the issue are dicta. Alabama law does not contain any binding authority requiring a juvenile court to consider the impact of a termination of parental rights on a child’s right to future support.

. In J.C., in a special writing, I cited Ex parte Brooks as authority for the proposition that a judgment terminating parental rights also ends the affected parent’s child-support obligation. 39 So.3d at 1113 (Moore, J., concurring in the result). I note that the precise issue of the effect of a judgment terminating parental rights on a parent's child-support obligation was not in issue in J.C. and that I was merely citing Ex parte Brooks to illustrate the qualitative difference between a termination of parental rights and a change of custody. Hence, I had no occasion in J.C. to question the accuracy or binding nature of the statements in Ex parte Brooks. As explained. at length in the body of this special writing, now that the issue is before the court, I realize from closer inspection, as does the main opinion, 39 So.3d at 1106, that any statement in Ex parte Brooks regarding the effect of a termination of parental rights on child-support obligations was mere dicta. That realization does not affect my overall conclusion in J.C. that a judgment terminating parental rights does differ significantly from a judgment changing custody. However, to be consistent, I no longer rely on the dicta in Ex parte Brooks to prove that distinction.
The majority likewise should not rely on my statement in J.C. as authority to support its conclusion, as it appears to do. 39 So.3d at 1107. As stated, that statement is nothing more than an unexamined regurgitation of the dicta in Ex parte Brooks. Furthermore, the statement is contained in a special writing concurring in the result, which has no binding precedence. Having recognized that the issue before us is one of "first impression,” 39 So.3d at 1106, the majority should not rely on past obiter dictum from any source relying on Ex parte Brooks, including my special writing in J.C.

. In at least one state in which the courts construed their statute to end a parent's child-support obligation upon a judgment terminating parental rights, the legislature amended the statute to provide for the continuation of such support. See 10 Okla. Stat. tit. 2001, *1115 § 7006-1.3(B)(3) (amended by 1995 Okla. Sess. Laws, ch. 352, §§ 67 and 199, effective July 1, 1995) ("Child support orders shall'be entered by the court that terminates parental rights and shall remain in effect until the court of termination receives notice from the placing agency that a final decree of adoption has been entered and then issues an order terminating child support and dismissing the case.”). See also Tex.Fam.Code Ann. § 154.001(a-1) (amended by 2005 Tex. Sess. Law Serv., ch. 268, § 1.08(a), effective September 1, 2005) (requiring financially able parent whose rights have been terminated to continue making child-support payments until child is adopted).

. In Gabriel v. Gabriel, 519 N.W.2d 293 (N.D.1994), the court actually found that the duty to pay child support ended after the father’s parental rights had been terminated and the child had been adopted by the mother’s new husband because the North Dakota Adoption Code provided that adoption " ‘[r]e-lieve[s] the natural parents of the adopted individual of all parental rights and responsibilities, and ... terminate[s] all legal relationships between the adopted individual and his relatives, including his natural parents ...."’ 519 N.W.2d at 295 (quoting N.D. Cent.Code § 14—15—14(1)(a)). The identical language used in Ohio Rev.Code Ann. § 3107.15(A)(1) convinced the court in In re Scheehle, 134 Ohio App.3d 167, 169, 730 N.E.2d 472, 474 (1999), that an interlocutory adoption order absolved the natural father of the duty to pay child support.

. Anguis is quoted or cited in McCabe v. McCabe, supra; County of Ventura v. Gonzales, supra; Kansas ex rel. Sec'y of Soc. & Rehab. Servs. v. Clear, supra; Nevada v. Vine, 99 Nev. 278, 662 P.2d 295 (1983); Coffey v. Vasquez, 290 S.C. 348, 350 S.E.2d 396 (Ct.App.1986); and Commonwealth ex rel. Spotsylvania County Dep’t of Soc. Servs. v. Fletcher, 38 Va.App. 107, 562 S.E.2d 327 (2002), aff'd, 266 Va. 1, 581 S.E.2d 213 (2003).

. I find similarly unpersuasive the holding in Kauffman v. Truett, 771 A.2d 36, 39 (Pa.Super.Ct.2001), that a termination of parental rights also extinguishes the parent’s child-support obligation. In Truett, the court relied exclusively on Monroe County Children & Youth Services v. Werkheiser, 409 Pa.Super. 508, 512, 598 A.2d 313, 315 (1991), in which the parties agreed "that termination of parental rights absolves the parent of her duty to pay support .... ” Obviously, if the parties stipulated as to that issue, the Werkheiser court never decided for itself whether a termination of parental rights does, in fact, terminate the parent’s obligation to support the child, and the Truett court erroneously failed to independently investigate that issue.

. Based on our consistent precedents, I do not agree with the statement "that the parental obligation of support is in tandem with the benefits of a parent-child relationship.” 39 So.3d at 1109. That statement should not be construed as relieving noncustodial parents of their obligation to pay child support despite their loss of access to the child or the loss of any other benefits of the parent-child relationship.